**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| UNILOC 2017 LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:18-cv-00512-JRG |
| | ) | |
| TERRANO, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

| | | |
|---|---|---|
| UNILOC 2017 LLC, | ) | |
| | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Case No. 2:18–cv–00510–JRG |
| v. | ) | |
| | ) | |
| CARDO SYSTEMS, INC., | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

**CARDO'S AND TERRANO'S  MOTION TO DISMISS PLAINTIFF'S CLAIMS
PURSUANT TO 35 U.S.C. § 101 BECAUSE THE ASSERTED PATENT IS INVALID**

# TABLE OF CONTENTS

Page

I.  STATEMENT OF THE ISSUE......................................................................... 1

II.  INTRODUCTION ........................................................................................... 1

III.  PROCEDURAL AND FACTUAL BACKGROUND....................................... 4

    A.  The Parties and Posture of the Case...................................................... 4

    B.  The '027 Patent ..................................................................................... 5

        1.  The '027 Patent Specification .......................................................... 5

        2.  The '027 Patent Claims .................................................................. 11

IV.  LEGAL STANDARDS ................................................................................. 15

    A.  Motions to Dismiss, Fed. R. Civ. P. 12(b)(6) ..................................... 15

    B.  Ideas are Unpatentable........................................................................ 16

    C.  The Claims are Invalid under 35 U.S.C. § 101 ................................... 17

V.  THE CLAIMS OF THE '027 PATENT ARE DIRECTED TO PATENT-INELIGIBLE SUBJECT MATTER ................................................................................... 19

    A.  The Claims Cover Abstract Ideas ....................................................... 19

    B.  The Claims Lack an Inventive Concept............................................... 24

VI.  CONCLUSION.............................................................................................. 26

## <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Affinity Labs of Tex. v. DIRECTV* LLC,
    838 F.3d 1253 (Fed. Cir. 2016) ...................................................................... 15, 19

*Affinity Labs of Texas, LLC v. Amazon.com, Inc.*,
    838 F.3d 1266 (Fed. Cir. 2016) ................................................................. 15, 20, 21

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014)................................................................................... passim

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................. 15

*Bilski v. Kappos*,
    561 U.S. 593 (2010)....................................................................................... 16, 20

*Bowlby v. City of Aberdeen*,
    681 F.3d 215 (5th Cir. 2012) .............................................................................. 15

*British Telecomms. PLC v. Iac/Interactivecorp*,
    2019 U.S. Dist. LEXIS 17269 (D. Del. Feb 4. 2019) ........................................... 21

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014) ..................................................................... 15, 17

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
    296 F.3d 1106 (Fed. Cir. 2002) .......................................................................... 21

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
    316 F. Supp. 3d 1138 (N.D. Cal. April 3, 2018)............................................. passim

*Cloud Satchel LLC v. Amazon.com, Inc.*,
    76 F. Supp. 2d 553 (D. Del. Dec. 18, 2014) ........................................................ 21

*Cloud Satchel, LLC v. Barnes & Noble, Inc.*,
    2015 U.S. App. LEXIS 22673 (Fed. Cir. Dec. 17, 2015)....................................... 21

*Content Extraction & Transmission LLC v. Wells Fargo Bank*, N.A.,
    776 F.3d 1343 (Fed. Cir. 2014) ..................................................................... 15, 18

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) .......................................................................... 21

*Epic IP LLC v. Backblaze, Inc.*,

   2018 U.S. Dist. LEXIS 199148 (Nov. 26 D. Del 2018), ...................................................... 23

*Halliburton Energy Servs. v. M-I LLC*,

   514 F.3d 1244 (Fed. Cir. 2008) ...................................................................................... 21

*In re TLI Commc'ns LLC Patent Litig.*,

   823 F.3d 607 (Fed. Cir. 2016) ............................................................... 17, 19, 20, 25

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,

   792 F.3d 1363 (Fed. Cir. 2015) ...................................................................................... 18

*Interval Licensing LLC v. AOL, Inc.*,

   896 F.3d 1335  (Fed. Cir. 2018) ...................................................................................... 21

*Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*,

   594 F.3d 383 (5th Cir. 2010) .......................................................................................... 15

*Mantissa Corp. v. Ondot Sys.*,

   2017 U.S. Dist. LEXIS 127370 (S.D. Tex. Aug. 10, 2017) ................................... 24

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,

   566 U.S. 66 (2012)............................................................................... 16, 17, 25

*Mobile Telecomms. Tech., LLC v. UPS, Inc.*,

   173 F. Supp. 3d 1324 (N.D. Ga. 2016)..................................................................... 23

*Mobile Telecomms. Tech., LLC v. UPS, Inc.*,

   2018 U.S. App. LEXIS 683 (Fed. Cir. Jan. 11, 2018) ........................................... 23

*Network Architecture Innovations*,

   2017 U.S. Dist. LEXIS 59310 (E.D. Tex. Apr. 18, 2017)..................................... 20

*Pres. Wellness Techs. LLC v. Allscripts Healthcare Solutions*,

   2016 U.S. Dist. LEXIS 61841 (E.D. Tex. May 10, 2016)................................ 16, 24

*Rubber-Tip Pencil Co. v. Howard*,

   87 U.S. 498 (1874)........................................................................................................ 16

*Telinit Techs., LLC v. Alteva, Inc.*,

   2015 U.S. Dist. LEXIS 125991 (E.D. Tex. Sept. 21, 2015) ......................... 3, 22, 25

*Two-Way Media Ltd v. Comcast Cable Commc'ns., LLC*,

   874 F.3d 1329 (Fed. Cir. 2017) ...................................................................................... 18

*Ultramercial, Inc. v. Hulu, LLC*,

772 F.3d 709 (Fed. Cir. 2014) ................................................................................................. 18

*Voxathon LLC v. Alpine Elecs. of Am., Inc.*,

   2016 U.S. Dist. LEXIS 6800 (E.D. Tex. Jan. 21, 2016)..................................................... 16, 25

Statutes

35 U.S.C. § 101 ............................................................................................................... passim

Other Authorities

3 CHISUM ON PATENTS § 8.04 (2018) [3][c] ............................................................................... 21

Rules

Fed. R. Civ. P. 12(b)(6).................................................................................................. 1, 2, 15, 16

Defendants Cardo Systems, Inc. ("Cardo") and Terrano LLC ("Terrano") move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) because the asserted claims of U.S. Patent No. 6,405,027 ("the '027 patent" (copy at Ex. A)) are invalid under 35 U.S.C. § 101 for claiming nothing more than an idea, an ordinary conference calling arrangement updated to use Bluetooth, a preexisting, and unpatentable, wireless communications standard.  The '027 patent does not disclose any software.   Other than identifying generic hardware (e.g., antenna, microprocessor, microphone, and speaker), there is nothing else disclosed in the patent.  Nothing is new.   Rather, the patent sets forth the idea of making conference calls with wireless links, using entirely conventional devices.

I.    **STATEMENT OF THE ISSUE**

Whether the claims of the '027 patent are invalid under 35 U.S.C. § 101 for claiming an abstract idea.

II.   **INTRODUCTION**

Uniloc 2017 LLC ("Uniloc") has asserted the '027 patent in two cases: Case No. 2:18−cv−00510−JRG *Uniloc 2017 LLC et al v. Terrano, LLC*, and Case No. 2:18−cv−00512−JRG.[1] Although in both cases Uniloc has asserted fewer than all the patent claims[2], Cardo and Terrano move under Fed. R. Civ. P. 12(b)(6) to dismiss, seeking to have all claims of the '027 patent held invalid under 35 U.S.C. § 101.

The claims of the '027 patent—issued more than a decade before the Supreme Court's seminal decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014)—are directed to the abstract idea of conference calls using ordinary mobile phones, with a Bluetooth wireless

---

[1]    The identical motion is being filed in both the Terrano and Cardo cases.

[2]    In both cases, Uniloc is asserting claims 1-4, 6-9, 12-15 and 17-19. See Complaints, ECF 1 at ¶ 18, in both cases.

link (called a "direct device-to-device wireless link" in the independent claims).  The patent

sailed through the Patent Office without any rejections or any indication of a detailed comparison

between the claimed subject matter and the prior art.

The claims, discussed in more detail below, cover nothing more than having a wireless

handset communicate with another caller using a standard "wireless link," and adding another

caller with "direct device-to-device" wireless link to create a conference call.

This is a standard conference call, which combines several calls into one. There is no new

technology. It is simply an adaptation of existing technology, with no inventive contribution.

Neither the claims, nor the specification explain in any detail: (a) how the parties are joined to

the multi-party call; or (b) how the various calls are initiated and maintained, other than

admitting they use standard, preexisting technology. Instead, they claim the abstract idea in a

purely functional manner (using "means-plus-function" terminology), using well-known

equipment – and Bluetooth.

Indeed, the '027 patent admits telephone conference calling has been known for years.

*See* Ex. A. col. 1, lines 37-40.  It also admits that Bluetooth "is known." (Ex. A, col. 1, lines 18-

22).  Simply claiming a Bluetooth link does not transform the preexisting components into

patent-eligible subject matter.  In *Cellspin Soft, Inc. v. Fitbit, Inc.*, 316 F. Supp. 3d 1138, 1150

(N.D. Cal. Apr. 3, 2018), a factually similar case, the Court granted a Rule 12(b)(6) motion on §

101 grounds, holding the patent-in-suit invalid:

> "The '794 Patent is 'not directed to a specific improvement to
> computer functionality' but merely utilizes generic computer
> hardware and software components, namely a '**ubiquitous mobile
> phone**,' **paired Bluetooth connection**, event notifications, 'fairly
> widespread' personal digital assistant, and 'general purpose
> computers and computing devices' to automate the process of
> transmitting multimedia content from a data capture device to one

or more websites. (internal citation and quotation marks omitted) (emphasis added)."

The Court further held the patent:

"'fails to provide any technical details for the tangible components' and 'instead predominantly describe[] the system and methods in purely functional terms' **using conventional computer components and existing technology. The mere utilization of Bluetooth or similar wireless technology is not sufficient, as the patent acknowledges that Bluetooth was a well-known means to 'connect[] and exchang[e] information between devices, for example, mobile phones…'"**

*Id*. at 1151 (internal citation and quotation marks omitted; emphasis added).

Similarly, in *Telinit Techs., LLC v. Alteva, Inc.*, 2015 U.S. Dist. LEXIS 125991, at *46 (E.D. Tex. Sept. 21, 2015), the Court held that claims directed to initiating telephone calls on a voice network in response to requests from a data network were directed to the abstract idea of using an intermediary to place and monitor telephone calls. The Court held claim 1

"describes a well-known and widely-understood concept—making a telephone call—and then applies that concept to the Internet using conventional computer components as an intermediary to place and monitor the telephone calls."

*Id*. (citing *Alice*, 134 S. Ct. at 2352).  Other claim elements, "receiving a data network request" and "monitoring a status of the call," were "tasks that human beings, such as telephone operators, have been doing for the past century."  *Id*. at *47 (internal citation omitted); *see also Telinit*, 2015 U.S. Dist. LEXIS 125991, at *52 ("a server that provides an indication of a change in a connection … merely recites what a telephone operator would do at a switchboard.").

The same is true here.  The claims of the '027 patent are directed to "tasks that human beings … have been doing" for years – combining calls to make conference calls.  As in *Telinit*, the '027 patent "does not contain any specific structural components…that remove it from the realm of an abstract idea." 2015 U.S. Dist. LEXIS 125991, at *47-*48. A microprocessor is

identified as part of the handset, but there is no software, or physical device that combines calls. Networks and "links" are identified, but there is nothing that suggests they are anything other than "generic networks." A human places all the calls; a human answers the calls; a human connects the calls to a conference with an undefined "combining means" in claim 1 (or program for "forming the signal" in claim 12).

The elements of the '027 patent claims – including a Bluetooth-enabled device – "'behave exactly as expected according to their ordinary use.'" *See Cellspin*, 316 F. Supp. 3d at 1152.   Unlike cases in which Courts have found claims sufficiently concrete, the '027 patent's claimed subject matter does not seek to improve the functionality of a cellular telephone itself, but relates only to placing and maintaining conference calls using preexisting phones and networks, preexisting components — all used in a conventional manner. Thus, the claims fail the first step of the *Alice* test (discussed below).  *Alice*, 134 S. Ct. at 2355.  Other than covering Bluetooth, the claims also fail the second step of *Alice*, because they lack any concrete, specific means for performing the abstract idea, after analyzing the claim elements individually and in an "ordered combination."  *Id.*

## III.   **PROCEDURAL AND FACTUAL BACKGROUND**

### A.   **The Parties and Posture of the Case**

Cardo is an innovative company that designs software for communications devices. Cardo manufactures and sells devices that, *inter alia*, allow motorcycle drivers to communicate with passengers or other riders. It has several issued U.S. patents.

Terrano, a subsidiary of Cardo, makes Bluetooth enabled communication devices for bicyclists.

Uniloc 2017 LLC does not manufacture or sell anything. According to assignment records at the U.S. Patent and Trademark Office, Uniloc 2017 LLC is the assignee of the '027

patent.

Uniloc and an affiliated company filed Complaints on September 14, 2018 against Cardo and Terrano.  (*See* Case No.  2:18-cv-00393-JRG and 2:18–cv–00397–JRG).   Uniloc then dismissed both cases on November 17, 2018 and refiled them on the same day without the affiliated Uniloc entity.

**B.**    **The '027 Patent**

1.    The '027 Patent Specification

The '027 patent, entitled "Group Call for a Wireless Mobile Communication Device *Using Bluetooth*," issued June 11, 2002 from an application filed December 8, 1999 (emphasis added).

The specification of the '027 patent—all 4½ columns—discloses a wireless communication (mobile) device with conference-calling capability, using wireless links.   The patent, however, admits that conference calls were old (Ex. A, col. 1, lines 38-40; all emphasis added):

> "*It is known to include conference or multi-party call functionality in networks,* PBXs, multi-line wired phones, and *cordless* base stations…"

The supposedly distinguishing characteristic was that conference calls had "not [been done] in mobile phones or entirely wireless communication terminals" (Ex. A, col. 1, lines 40-41), although the patent admits they had been done with *cordless* base stations.

The specification also admits that Bluetooth calls were also known:

> "*Such a wireless communication device is known* from Bluetooth Specification, Version 1.0, Foundation, Jul. 22, 1999 … The Bluetooth specification includes the definition of the protocols and procedures to be used by devices implementing the wireless intercom ... *A typical scenario is a speech call between two (cellular) phones implemented by a direct phone-to-phone wireless connection using Bluetooth only*."

5

(Ex. A, col. 1, lines 23-31).

The patent then asserts the following allegedly is new:

> However, the Bluetooth specification does not consider the possibility of a *group call functionality* to allow a first phone to use a Bluetooth link to conference a second phone into a cellular call with a remote third phone, or to allow three or more phones to participate in a group conversation implemented *entirely via Bluetooth Intercom links*.

(Ex. A, col. 1, lines 17-37).

Although the patent admits that conference calls were known, wireless conference calls were known, and wireless Bluetooth calls were known, it seeks patent protection on the application of the two preexisting technologies, conference calls and Bluetooth.

FIG. 1A of the '027 patent shows a first group call arrangement 10.



FIG. 1A

Communication device $D_0$ is a Bluetooth-enabled mobile cellular handset that carries out a "local side" call to a remote "communication device" $D_1$ (*i.e.*, a telephone), over a standard communication path that includes a wireless cellular connection. (Ex. A at 2:50-59).  There is nothing new here. The path also includes network infrastructure 14 between base station 12 and remote device $D_1$, typically including the public switched telephone network (PSTN) 16. (*Id*. at 2:50-63; Fig.1A).  The patent admits there is nothing new here either (col. 2, lines 59-63):

"***As is conventional for such a call***, the communication path also includes network infrastructure 14 interposed between base Station 12 and remote communication device $D_1$, which infrastructure typically includes the public switched telephone network (PSTN) 16."

FIG. 1A shows additional devices ($D_2$ to $D_n$) that engage in conference calls with device $D_0$ over wireless links ($L_2$ to $L_n$) "for Bluetooth Intercom Profile communications." (Ex. A, at 3:11-15).

As in any conventional conference call, device $D_0$ can participate in the calls with other devices by acting "as the master," here of the Bluetooth network. (*Id.* at 2:64-3:11). Like any conventional telephone, each device also has a microphone (M) and a speaker (S). (*Id.* at 3:23-26).

Not surprisingly, the microphone has an input signal, "I" (i.e., voice), and the speaker has an output, "O" (i.e., sound). (Ex. A, col. 3, lines 26-31). This leads to the predictable set of pseudo-"equations" that show the "output" of the speaker for device $O_0$ includes the voice-input from the other telephones.

$$O_0 = I_1 + I_2 + I_3 + ... I_{n-1} + I_n$$
$$O_1 = I_0 + I_2 + I_3 + ... I_{n-1} + I_n$$
$$O_2 = I_0 + I_1 + I_3 + ... I_{n-1} + I_n$$
$$O_n = I_0 + I_1 + I_2 + I_3 + ... I_{n-1}$$

(*Id.* col. 3, lines 47-59; see also col. 3, lines 61-4:3). The voices are simply added together, as they had been in the admittedly preexisting conference call systems. No elaborate or novel "equation" is needed to know that.

To carry on a group call, device $D_0$ includes "group call combining means" C, that simply combines the various calls. (Ex. A, col. 3, lines 39-46). The specification does not disclose any physical device corresponding to the group call combining means C, or any software to perform the function; there is no reason to think this "means" works any differently

from "call combining means" that existed long before the '027 patent was filed, including, frankly, human telephone operators.

There is no software, hardware or anything else that describes how this happens, meaning that this is a well-known, conventional process, using well-known, conventional devices.

FIG. 1B shows an alternative arrangement 20, where device $D_1$ is a Bluetooth-enabled communication device similar to devices $D_2$-$D_n$ and wireless link $L_1$ (between $D_0$ and $D_1$) is also a Bluetooth link (implemented in accordance with the Bluetooth Intercom Profile). For this configuration, all wireless links are Bluetooth intercom links. As in FIG. 1A, device $D_0$ includes the unspecified "group call combining means C," which is arranged to perform the same functions. (*Id*. at 4:4-24, Fig. 1B).



FIG. 1B

FIG. 2 shows mobile handset $D_0$.



FIG. 2

It includes all the components one would expect in a mobile phone: a microphone "M," speaker "S," numeric keypad 31, and driver 32 for a display 33, a digital signal processor (DSP) 30a, a microprocessor 30b, memory 30c and 30d. (Ex. A, col. 4, lines 25-39). The patent makes no claim that any of these components are new, and repeatedly says the calls are "appropriately combin[ed]" (Abstract, col. 1, line 50, col. 4, line 36, col. 5, line 26).  How all these components work, other than in the most generalized discussion, is unstated in the specification, other than saying they use Bluetooth.

FIG. 3 shows a flow chart of a setup for a group call; and, but for the "cellular" box, would have covered admittedly preexisting conference calls. To go along with the "equations," the patent includes a simple flow chart (FIG. 3) showing that calls, indeed, get combined.



FIG. 3

For example, a cellular call between devices $D_0$-$D_1$ can be set up before Bluetooth calls between devices $D_0$-$D_2$ and $D_0$-$D_3$ are successively set up. Dispensing with the conventional wireless call would result in a group call among three phones solely via Bluetooth links, as shown in FIG. 1B. (*Id*. at col. 4, lines 50-60, Fig. 3, Fig. 1B).

The group call setup begins as follows: the user of device $D_0$ [40] views a list of available services on the display 33, e.g., "cellular call" and "Bluetooth call". The user selects "cellular call" [42], e.g., by pressing a key on keypad 31, which dials device $D_1$ [44]. The user of device $D_1$ answers the call [46]. (*Id*. at col. 4, line 61 to col. 5, line 3, Fig. 3). The call with device $D_1$ is placed "on hold" by device $D_0$ [50]. *Id*. at col. 5

The user of device $D_0$ then selects "Bluetooth call" from the list and causes a Bluetooth connection request to be issued to device $D_2$ [54]. (*Id*. at col. 5, lines 4-10, Fig. 3). The user of

device $D_2$ accepts the Bluetooth connection request [56], and the connection is completed [58]). *See* Fig. 3 and col. 5, lines 11-14.

The user of device $D_0$ then releases the "hold," which creates the conference call. (Col. 5, lines 24-28, and Fig. 3 element 70).

All the patent shows are generic statements in black boxes – ideas to connect more than two telephones wirelessly, with Bluetooth.

Stripped of its technical-sounding jargon, the group call disclosed and claimed in the '027 patent is this: one caller using a wireless link, with preexisting technology, connects to other callers so they can speak together. Other than using Bluetooth, this is a standard multi-party call. There is nothing inventive, and no technical problem is solved.

Although the specification of the '027 patent repeatedly refers to "Bluetooth Intercom Profile" and "Bluetooth Telephony Profile," it does not disclose any algorithm or other information about either Profile, including how the Profiles are to be implemented.  It effectively says, "apply it."  Regardless, implementing the Bluetooth Intercom (or Telephony) Profile, or modifying it to allow conference calls, is an abstract idea.

> 2.    The '027 Patent Claims

The '027 patent has twenty claims. Claims 1 and 12 are independent. Claim 1 recites "[a] mobile communication device comprising" (emphasis added):

> a *local end* comprising an electrical-to-acoustic transducer and an acoustic-to-electrical transducer;
>
> *means for carrying on a local side of a first call to a remote end thereof via a first wireless link*, in which signals derived from the local end are applied to said first call for transmission to the remote end thereof and signals derived from the remote end of the first call are applied to the local end; and
>
> *means for carrying on a local side of at least a second call to a remote end thereof comprising another communication device via*

*a direct device-to-device second wireless link, without any intervening base station* [e.g., Bluetooth], in which signals derived from the local end are applied to said second call for transmission to the remote end thereof and signals derived from the remote end of the second call are applied to the local end;

wherein the means for carrying on the local sides of the first and second calls can be active simultaneously; and

further comprising *group call combining means for forming the signals applied to said local end, the signals applied to said first call, and the signals applied to said second call*, such that the signals applied to the local end include contributions from the signals derived from the remote ends of the first and second calls, the signals applied to said first call include contributions from the signals derived from said local and second ends, and the signals applied to said second call include contributions derived from said local and first ends.

Claim 2 depends from claim 1 and adds that "said first wireless link is to a base station." Claim 3 depends from claim 2 and adds that "said first wireless link is a cellular or PCS [personal communications service] link." Claim 4 also depends from claim 2, and adds that "said first wireless link is a cordless link." The patent makes no claim that any of these transmission formats is inventive, and there is nothing in the patent that supplies any technical information needed to implement them, even if they were, other than mentioning the Bluetooth standard.

Unasserted claim 5 also depends from claim 1 and adds that "said first wireless link is also a direct device-to-device link to still another communication device, without any intervening base station."

Claims 6-9 depend from claims 1-4, respectively, and add that "said direct device-to-device second link is implemented in accordance with the Bluetooth Intercom Profile." Claim 10 depends from claim 5 and adds that "said direct device-to-device first and second links are implemented in accordance with the Bluetooth Intercom Profile."

Claim 11 depends from claim 9 and further cites that "said cordless link is implemented in accordance with the Bluetooth Telephony Profile."

These are simply adaptations of preexisting technology – and an idea to use it to allow conference calls with previously known information.

Claim 12, and its dependent claims, are essentially the same as claims 1-11, and cover the same idea, but claim information "stored… in memory:" "[a] program stored in or among one or more memories which is for execution by a processor within a mobile communication device which includes a local end comprising an electrical-to-acoustic transducer [i.e., a speaker] and an acoustic-to-electrical transducer [i.e., a microphone] said program being configured for steering[3]" (emphasis added):

> *carrying on a local side of a first call to a remote end thereof via a first wireless link*, in which signals derived from the local end are applied to said first call for transmission to the remote end thereof and signals derived from the remote end of the first call are applied to the local end; and
>
> *carrying on a local side of at least a second call to a remote end thereof comprising another communication device via a direct device-to-device second wireless link without any intervening base station*, in which signals derived from the local end are applied to said second call for transmission to the remote end thereof and signals derived from the remote end of the second call are applied to the local end;
>
> wherein the local sides of the first and second calls are active simultaneously; and
>
> *forming the signals applied to said local end, the signals applied to said first call, and the signals applied to said second call, to maintain a group call* such that the signals applied to the local end include contributions from the signals derived from the remote ends of the first and second calls, the signals applied to said first call include contributions from the signals derived from said local and second ends, and the signals applied to said second call include

---

[3] "Steering" is undefined.

contributions derived from said local and first ends. *Id.* at cols. 6-7, lines 39-4.

Claim 13 (depends from claim 12) adds that the first wireless link is to a base station. Claim 14 (depends from claim 13) adds that the first wireless link is a cellular or PCS link. Claim 15 (depends from claim 13) adds that the first wireless link is a cordless link. Claim 16 (depends from claim 12) adds that the first wireless link "is also a direct device-to-device link to still another communication device, without any intervening base station."

Claims 17-19 (depend from claims 12, 13 and 15, respectively) add that the direct device-to-device second link "is implemented in accordance with the Bluetooth Intercom Profile." (*Id.* at 8:1-9). Claim 20 (depends from claim 19) adds that the cordless link "is implemented in accordance with the Bluetooth Telephony Profile."

The "program" claims (claims 12-20) are the mirror image of the "device" claims (claims 1-11), add no new technology or software (i.e., a "program"); instead, they simply adapt what was admittedly already well known to a "direct device-to-device" wireless environment.

Nothing else is recited in the claims. Claim 1 does not specify how the "means for carrying on a local side of a first call" (disclosed as "a Bluetooth enabled mobile cellular or PCS [ ] or cordless handset...," Ex. A, col. 2, lines 52-54) causes local signals to be applied to the remote end of a first call, and vice versa. It does not specify how the "means for carrying on a local side of at least a second call" (disclosed as "any mobile or fixed Bluetooth enabled communication terminals, including but not limited to Bluetooth enabled mobile cellular, PCS, or cordless handsets like $D_0$," *id.* col. 3, lines 1-4) causes local signals to be applied to the remote end of a second call, and vice versa.

Other than what has already been discussed, neither claim 12, nor the specification, explains how the claimed program is "configured for steering:" (i) carrying on a local side of a

first call via a first wireless link; (ii) carrying on a local side of at least a second call via a direct device-to-device second wireless link without any intervening base station; or (iii) forming the signals applied to the local end and first and second calls, to maintain a group call.

Claims 6-11 and 17-20 recite a Bluetooth Internet Profile; how that implementation is accomplished, or what different functionality it provides from what was already known, is unstated.

## IV.   <u>LEGAL STANDARDS</u>

### A.  Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

The Court is familiar with the standard for motions under Fed. R. Civ. P. 12(b)(6). Briefly, the Court must assume that facts in the complaint are true.  However, conclusory arguments need not be accepted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

A motion to dismiss under Rule 12(b)(6) (or 12(c)) is a common way to dispose of claims for patent infringement where the patent is invalid under 35 U.S.C. § 101.  *See e.g., Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269-72 (Fed. Cir. 2016) (affirming grant of judgment on pleadings for lack of patentable subject matter); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1351-52 (Fed. Cir. 2014) (same); *Affinity Labs of Tex. v. DIRECTV LLC*, 838 F.3d 1253 (Fed. Cir. 2016) (granting motion to dismiss for lack of patentable subject matter); *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.,* 776 F.3d 1343 (Fed. Cir. 2014)

(same); *Pres. Wellness Techs. LLC v. Allscripts Healthcare Solutions*, 2016 U.S. Dist. LEXIS 61841, at \*15-16 (E.D. Tex. May 10, 2016); *Voxathon LLC v. Alpine Elecs. of Am., Inc.*, 2016 U.S. Dist. LEXIS 6800, at \*2 (E.D. Tex. Jan. 21, 2016) (Gilstrap, J.) (granting Rule 12(b)(6) motions, holding patent invalid under § 101).

### B.    Ideas are Unpatentable

Over 100 years ago, the Supreme Court held that "[a]n idea of itself is not patentable." *Rubber-Tip Pencil Co. v. Howard*, 87 U.S. 498, 507 (1874). What is needed, rather, is "a new device by which [the idea] may be made practically useful." *Id*. This rule has been steadfastly applied since then. *See, e.g., Alice*, 134 S. Ct. at 2355 ("The abstract ideas category embodies the longstanding rule that an idea of itself is not patentable." Internal citation and quotation marks omitted). Simply being the first person to rush off to the Patent Office to file an application on an idea, based on preexisting technology, developed by others, without providing any concrete solution to an existing problem, without transforming anything, without performing any post-solution activity, and without describing any new technology, does not rise to the level of a patentable invention. *Bilski v. Kappos*, 561 U.S. 593, 604, 612 (2010) (explaining that the machine or transformation test, although not the exclusive test, is "a useful and import clue" in making § 101 determinations and holding that post-solution activity itself does not make the subject matter patentable).

These principles encourage advancement in science and prevent persons from improperly monopolizing a section of the economy without providing any societal benefit. *See generally*, *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 86 (2012); *Alice*, 134 S. Ct. at 2354.

16

The '027 patent covers the idea of wireless conference calling, including connections made with a Bluetooth wireless link.  Because there is no technical information disclosed explaining how that device (or network) operates, no software, no hardware (other than standard telephony components), the patent simply covers the abstract idea of having wireless calls joined together with undefined "means" and a "program" – and cannot be patented.

> "[W]e need to only look to the specification, which describes the telephone unit and server as either performing basic computer functions such as sending and receiving data, or performing functions 'known' in the art. … [T]he claimed functions are 'well understood, routine, activities' previously known to the industry."

*In re TLI Comm'ns LLC Patent Litig.*, 823 F.3d 607, 614 (Fed. Cir. 2016) (*citing Alice*, 134 S. Ct. at 2359 (quoting *Mayo*, 566 U.S. at 73)); *see also buySAFE*, 765 F.3d at 1355 ("That a computer receives and sends information over a network – with no further specification – is not even arguably patentable."); *Cellspin*, 316 F. Supp. 3d at 1152-53.

The bottom line is that conceptual ideas using preexisting technology or theorizing an a new function, as claimed here, are no more patentable than, a pencil with an eraser or *Bilski*'s computer-based hedging, is not patentable subject matter.

## C.     The Claims are Invalid under 35 U.S.C. § 101

Title 35 U.S.C. § 101 states: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."

In *Alice*, the Court set out a two-step test for "distinguishing patents that claim … abstract ideas from those that claim patent-eligible applications of those concepts." 134 S. Ct. at 2355 (citing *Mayo*, 132 S.Ct. 1289).  Subject matter eligibility under § 101 serves as an important check on the scope of the patent monopoly by preventing patentees from capturing a "building

block[] of human ingenuity," "a method of organizing human activity," an "idea of itself," "an algorithm," or a similar foundational concept. *Id.* at 2354-57. The doctrine exists to prevent patent law from "inhibit[ing] further discovery by improperly tying up the future use of these building blocks of human ingenuity." *Id.* at 2354.

The first step of *Alice* requires a Court to determine if the claims are directed to, inter alia, a "patent-ineligible concept". 134 S. Ct. at 2355. "If not, the claims pass muster under § 101." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) ("At step one of the *Alice* framework, it is often useful to determine the breadth of the claims in order to determine whether the claims extend to cover a 'fundamental practice long prevalent in our system.'") (quoting *Alice*, 134 S. Ct. at 2356).

The second *Alice* step requires the Court determine if the elements of the claim individually, or "as an ordered combination," "transform the nature of the claim" into a patent-eligible application. *Alice*, 134 S. Ct. at 2355. The Court held: "[w]e have described step two of this analysis as a search for an 'inventive concept.'" *Id.*

Courts can determine patent eligibility based on a single representative claim. *Two-Way Media Ltd v. Comcast Cable Commc'ns., LLC*, 874 F.3d 1329, 1340 (Fed. Cir. 2017) ("[T]he district court correctly determined that the patents were ineligible under § 101 on the basis of the representative claims and Two-Way Media's proposed constructions, which the district court expressly adopted."); *Content Extraction*, 776 F.3d at 1348. As discussed in more detail below, claim 1 is representative of all claims. There is nothing in independent claim 12 or any of the dependent claims that changes the result.

## V. THE '027 PATENT CLAIMS ARE DIRECTED TO PATENT-INELIGIBLE SUBJECT MATTER

### A. The Claims Cover Abstract Ideas

The first step in an *Alice* inquiry is "'to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea.'" *TLI*, 823 F.3d at 612.

In *TLI*, the Court held that simply combining two preexisting technologies was unpatentable because:

> "the claims here are not directed to a specific improvement to computer functionality. Rather, they are directed to the use of conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by combining the two."

*Id*.

Here, the two existing technologies were conference calling and wireless calling. Even assuming, *arguendo,* that wireless calling were "nascent," *TLI* dictates the result: combining the two is not patentable.  The asserted patent has no technical details or algorithms (other than mentioning Bluetooth), only a simple flow chart and elementary pseudo-"equations."   In *DIRECTV*, 838 F.3d at 1260, the Federal Circuit held: "Nothing in the flow chart or the text of the specification provides any details regarding the manner in which the invention accomplishes the recited functions."

Here, there is no disclosed structure for the "group call combining means" (claim 1), or the equivalent "forming the signals … to maintain a group call" (claim 12),  and other than "black boxes," no disclosure of any hardware (or software) for any of the other claimed "means," "carrying on" (claim 12) or "forming" functions.  The '027 patent's failure to provide any technical substance leads to the conclusion that the claims solve no problem; rather, they cover

an application of existing technology to accomplish what it was designed (by others) to do, and had done for years – to allow multi-party telephone conference calling, including among Bluetooth equipped phones. *Bilski*, 561 U.S. at 610-11 ("[T]he prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment' [i.e., wireless/Bluetooth] …"); *Network Architecture Innovations LLC v. CC Network Inc*, 2017 U.S. Dist. LEXIS 59310, at *10 (E.D. Tex. Apr. 18, 2017) (holding that an "age-old practice" cannot be patented simply because it is applied to a new platform); *Cellspin*, 316 F. Supp. 3d at 1152-53.

In *TLI*, the Court further held:

> "The specification does not describe a new telephone, a new server, or a new physical combination of the two. The specification fails to provide any technical details for the tangible components, but instead predominately describes the system and methods in purely functional terms."

823 F.3d at 612; *accord, Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1271 (Fed. Cir. 2016) ("Features such as network streaming and a customized user interface do not convert the abstract idea of delivering media content to a handheld electronic device into a concrete solution to a problem…. [T]he patent in this case is not directed to the solution of a 'technological problem,' nor is it directed to an improvement in computer or network functionality. It claims the general concept of streaming user-selected content to a portable device.") (Internal citations omitted).

The same is true here concerning the '027 patent.  There is no new telephone or server, and the claims all use functional terminology (e.g., "means for carrying on a local side of a first call," "means for carrying on a local side of at least a second call," the "call combining means," and "carrying on a local side of a first call (claim 12).").  These claim elements are in classic

means-plus-function format. A conventional test for whether a claim element is in functional format is if it claims what the device "*does* rather than by what it *is*." *Halliburton Energy Servs. v. M-I LLC*, 514 F.3d 1244, 1255 (Fed. Cir. 2008) (emphasis added);  3 CHISUM ON PATENTS § 8.04 (2018) [3][c] (emphasis in original) (These claims elements describe *what the element does* (e.g., "carrying out a local side call… via a wireless link (claim 1)), rather than what it is, or *how* it accomplishes that result.); *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1114 (Fed. Cir. 2002) ("'[F]or' generally signals a claimed function.").

Functional claims are a red-flag warning demonstrating the absence of a patentable invention.  *See Amazon.com*, 838 F.3d at 1269 ("The purely functional nature of the claim confirms that it is directed to an abstract idea, not to a concrete embodiment of that idea."); *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016) ("Indeed, the essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101"); *British Telecomms. PLC v. IAC/Interactivecorp*, 2019 U.S. Dist. LEXIS 17269 at *19 (D. Del. Feb 4. 2019) (Bryson, J.).  The claim language here could hardly be more functional, and at the same time is devoid of any limitations that show a patent-eligible concept.

Another indication that claims are invalid under § 101 is their breadth. *See Interval Licensing LLC v. AOL, Inc*., 896 F.3d 1335, 1347  (Fed. Cir. 2018); *Cloud Satchel LLC v. Amazon.com, Inc.*, 76 F. Supp. 3d 553, 563-64 (D. Del. Dec. 18, 2014) *aff'd sub nom. Cloud Satchel, LLC v. Barnes & Noble, Inc.,* 2015 U.S. App. LEXIS 22673 (Fed. Cir. Dec. 17, 2015) (holding conventional components like a processor, memory, a network, transceivers, and the steps of transmitting and receiving were generic and were insufficient to demonstrate patentability, even if applied to a mobile (i.e., wireless) device). The claims here relate to any

mobile communication device (phone, iPad, computer, watch).  In *Cloud Satchel*, they related to "any 'suitable' portable computer."  76 F. Supp. 3d at 563.

As discussed above, in *Telinit*, the Court invalidated claims that "describe[] a well-known and widely-understood concept—making a telephone call—and then applies that concept to the Internet using conventional computer components".  2015 U.S. Dist. LEXIS 125991, at *46. As the '027 patent admits, people have been making conference calls for years, using land lines and cordless phones.  The "call combining means," obviously existed long before the '027 patent was filed.

As in *Telinit*, the '027 patent "does not contain any specific structural components…that remove it from the realm of an abstract idea." *See id.* at *47-*48. The claims here "do[ ] not contain any specific structural components—beyond a generic 'processor' and generic 'networks'—that remove [them] from the realm of an abstract idea." *Id*.  The asserted patent identifies a "black box" called "microprocessor" as part of the handset, but there is no software, or physical device, that combines the calls. Microprocessor, memory, networks and "links" identified in the '027 patent are nothing more than "generic" components. *See Cloud Satchel*, 76 F. Supp. 3d at 563-64.

Further, like the *Cellspin* patent, the '027 patent is not directed to a specific improvement to multi-party calling functionality, but merely utilizes generic hardware and software components. *See Cellspin*¸ 316 F. Supp. 3d at 1150.  It uses "a 'ubiquitous mobile phone,' [ ] Bluetooth connection…and 'general purpose' components" to place and maintain a conference call among cellular phones. *Id*. The claims here describe "a well-known and widely-understood concept," i.e., multi-party calling, and simply applies that idea to Bluetooth-enabled cellular phones using conventional components. *See Telinit*, 2015 U.S. Dist. LEXIS 125991, at *46. The

additional elements of the dependent claims, especially "direct device-to-device [ ] link[s] [ ] implemented in accordance with the Bluetooth Intercom Profile," also are abstract ideas and, in the case of the Bluetooth Specification, admittedly were known at the time of the filing[4].

As the *Cellspin* Court held, ***"[t]he mere utilization of Bluetooth or similar wireless technology is not sufficient."*** 316 F. Supp. 3d at 1151 (emphasis added).

Recently, in *Epic IP LLC v. Backblaze, Inc.,* 2018 U.S. Dist. LEXIS 199148, at *49 (D. Del. Nov. 26, 2018), the Court held, on a motion to dismiss, a patent directed to creating an online chat session (akin to the claimed conference calls) was invalid under section 101. Adding the term "facilitating the dynamic formation of a chat" did not identify any patentable device or method. *See id.* at *16. And, the Court held:

> "The idea of individuals getting together to communicate is plainly abstract in the sense in which that term has been used in cases addressing the issue of patent eligibility: it is a commonplace occurrence with long historical (indeed, pre-historical) roots. The idea of a sub-group of persons with particular shared interests forming a sub-group for communication is also commonplace in everyday life."

*Id.* at *14. Forming online chat sessions, using preexisting technology, not solving any technological problem, is not meaningfully different from creating wireless conference calls, and the '027 patent should suffer the same fate as the patent asserted in that case.

In *Mobile Telecomms. Tech., LLC v. UPS, Inc.,* 173 F. Supp. 3d 1324 (N.D. Ga. 2016), *aff'd without op.* 2018 U.S. App. LEXIS 683 (Fed. Cir. Jan. 11, 2018), the Federal Circuit affirmed a decision holding a patent invalid directed to using text messages or emails to notify package recipient about the status of their delivery. The District Court's decision held that text and email messages were generic messaging formats that simply changed the communication

---

[4]      Ex. A at 1:18-30.

(and its link) from voice to text or email.  173 F. Supp. 3d at 1334.  The '027 patent changes that communication path to a direct wireless connection.

Consequently, there is nothing in the claims of the '027 patent, or the specification, to lift the claims out of the realm of the abstract idea of a multi-party call with direct wireless connections.

### B.  The Claims Lack an Inventive Concept

The second *Alice* step, searching for an "inventive concept":

> "requires the court 'to consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements transform the nature of the claim into a patent-eligible application.' The Court described that step as 'a search for an inventive concept—i.e., an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'"

*Pres. Wellness* at *15-*16 (quoting *Alice*, 134 S. Ct. at 2355); *see, e.g.*, *Mantissa Corp. v. Ondot Sys.*, 2017 U.S. Dist. LEXIS 127370, at *39-*40 (S.D. Tex. Aug. 10, 2017):

> "It is well-established that 'an inventive concept must be evident in the claims.' Moreover, the inventive concept 'must be *significantly* more than the abstract idea itself.' … The 'mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea. Rather, the components must involve more than performance of 'well-understood, routine, conventional activities' previously known to the industry.'" (Internal citations omitted; emphasis in original).

Considering the elements of the claims of the '027 patent, individually or "as an ordered combination," the additional elements—e.g., "means for carrying on a local side first call," Bluetooth Intercom Profile in the dependent claims—do not "transform the nature of the claim[s] into a patent-eligible application." The additional components do not "involve more than the performance of 'well-understood, routine, conventional activities' previously known to the industry." These claims effectively say "apply it" (e.g., the Bluetooth Intercom Profile (claims 6-

9) and (17-19), PCS (claim 3)), which is another hallmark of invalid claims under Section 101. *Alice*, 134 S. Ct. at 2357-58 (citing *Mayo*, 66 U.S. at 72); *Two-Way Media*, 874 F.3d at 1338; *Voxathon*, 2016 U.S. Dist. LEXIS 6800. at *12.

In *Telinit*, the Court found that method lacked an inventive concept, holding: "claim 1 does not direct the generic elements to a specific application beyond 'receiving,' 'identifying,' 'signaling,' 'monitoring,' or 'providing' information." 2015 U.S. Dist. LEXIS, at *49.   The Court likewise found system claim 5 lacked an inventive concept: "[The claimed] structures **do not provide any meaningful technical limitations** to claim 5. Without the minor computer-based limitations, claim 5 **merely recites what a telephone operator would do at a switchboard**." *Id.* at *52, (citing *Alice*, 134 S. Ct. at 2358; emphasis added).

Similarly, the *Cellspin* Court found a lack of an inventive concept:

> "Here, the 'recited physical components[,]' namely a data capture device, paired Bluetooth connection, and a Bluetooth enabled mobile device, 'behave exactly as expected according to their ordinary use.' A patent 'does not become non-abstract' merely because the claims are set in a 'technological environment' consisting of conventional components and utilize standard technology."

316 F. Supp. 3d at 1152 (quoting, respectively, *TLI*, 823 F.3d at 615 and *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1319 (Fed. Cir. 2016) (holding patents invalid under § 101)).

It is no different with the '027 patent. The claims recite nothing more than generic computer and telephony elements (e.g., microphone , speaker, "means for [and a program "configured for"] carrying on a local side of a first call," and "wireless link[s])"). There are no "transformative elements"—only routine, well-known telephony components, including Bluetooth-enabled devices.  Everything in the claims—including "direct device-to-device [ ]

link[s] [ ] implemented in accordance with the Bluetooth Intercom Profile"—"behave[s] exactly as expected according to their ordinary use."

## VI. <u>CONCLUSION</u>

For the foregoing reasons, the claims of the '027 patent are directed to the abstract idea of a conference call involving wireless links. Adding Bluetooth technology does not give rise to an inventive concept. The claims, therefore, are invalid under 35 U.S.C. § 101.

Respectfully submitted,

*s/ David Loewenstein w/ permission*
Justin Kurt Truelove
TRUELOVE LAW FIRM, PLLC
100 West Houston
P.O. Box 1409
Marshall, TX 75671
Tel: (903) 938-8321
Fax: (903) 215-8510
Email: kurt@truelovelawfirm.com

David A. Loewenstein
Clyde A. Shuman
PEARL COHEN ZEDEK LATZER BARATZ LLP
1500 Broadway, 12th Floor
New York, NY 10036
Tel: (646) 878-0800
Fax: (646) 878-0801

*Attorneys for Defendant Terrano, LLC*

**CERTIFICATE OF COMPLIANCE WITH THE COURT'S
35 U.S.C. § 101 MOTION PRACTICE ORDER**

_____ The parties agree that prior claim construction is not needed to inform the

Court's analysis as to patentability.

__X__ The parties disagree on whether prior claim construction is not needed to

inform the Court's analysis as to patentability.

*s/ David Loewenstein w/ permission*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed electronically in

compliance with Local Rule CV-5(a).  Therefore, this document was served on all counsel who

are deemed to have consented to electronic service.

*Kurt Truelove_____*

1